NOT FOR PUBLICATION                                          (Docket No. 10)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                              :
JOHN D. HANDRON,                              :
                                              :
                          Plaintiff,          :          Civil No. 08-3119 (RBK/KMW)
                                              :
            v.                                :          **OPINION**
                                              :
KATHLEEN SEBELIUS, Secretary of              :
the United States Department of Health and   :
Human Services,                               :
                                              :
                          Defendant.          :
_____         :

**KUGLER**, United States District Judge:

     This case poses a simple question with a difficult answer: What do the words "or otherwise" mean in the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504?  This question comes before the Court upon the Motion for Summary Judgment by Plaintiff Dr. John D. Handron (Docket No. 10).  Plaintiff asks the Court to award him attorneys' fees incurred while successfully defending against alleged Medicare overpayment before the Department of Health and Human Services.  Because the Court finds that the position of the United States was not represented by counsel or otherwise as required by the EAJA, Plaintiff's motion is denied and the case is dismissed.

1

## I.      BACKGROUND

The following facts are deemed undisputed and are taken entirely from Plaintiff's moving papers.  Under Local Civil Rule 56.1, the movant in a summary judgment motion is required to supply the court with a statement that sets forth the material facts to which no genuine issue exists.  L. Civ. R. 56.1(a).  Plaintiff supplied the required Rule 56.1 statement here.  Rule 56.1 also requires that the non-movant furnish a responsive statement of material facts.  Id.  Any material fact not disputed is deemed undisputed.  Id.  Where the non-movant fails to supply the counter Rule 56.1 statement altogether, the court can treat all properly support facts by the movant as uncontroverted.  Appleby v. Glaxo Wellcome, Inc., Civ. No. 04-0062, 2005 WL 3440440, at *2 (D.N.J. Dec. 13, 2005).  In this case, Defendant Kathleen Sebelius[1] did not supply the required Rule 56.1 statement.[2]  Therefore, because the Court finds that Plaintiff's material facts are well supported, the following facts are uncontroverted.

In 2001, Empire Medicare Services began collecting records from various nursing homes where Dr. Handron, a psychologist, treated patients.  In March 2002, Eastern Benefits Integrity Center (EA-BISC), a contractor of the Department of Health and Human Services (HHS), informed Dr. Handron that it would suspend all future Medicare payments owed to him for services rendered.  On August 20, 2003, Empire sent Dr. Handron a letter (the Demand Letter)

---

[1] This matter was originally filed against Michael O. Leavitt in his capacity as the Secretary of the United States Department of Health and Human Services.  However, Mr. Leavitt no longer holds that office, and his successor, Kathleen Sebelius, was automatically substituted as the Defendant under Federal Rule of Civil Procedure 25(d) and the Court's October 13, 2009 Order.

[2] This omission did not escape Plaintiff's attention and was duly noted in his reply brief. See Pl. reply br. at 7 n.19.

asserting a Medicare overpayment of $604,038 for services provided between November 1, 1994 and January 31, 2001.  The Demand Letter was based on a review of Dr. Handron's records by EA-BISC.  In the Demand Letter, Empire alleged that HHS had overpaid Dr. Handron in the amount of $125,696.71, and from that overpayment, Empire extrapolated that HHS had overpaid Dr. Handron $604,038 over his entire claims history.

The basis for the alleged overpayment was Section 1862(a)(1) of Title XVIII of the Social Security Act, which excludes payment by Medicare for services that "are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of the malformed body member."  Pl. 56.1 stmt. at ¶ 8.  Specifically, the Demand Letter alleged that Dr. Handron's psychotherapy and diagnostic testing services did not comply with the documentation, level of care, and medical necessity requirements for payment under the Medicare Program.

Dr. Handron appealed the overstatement determination to a Fair Hearing Officer of the Department of Health and Human Services in September 2005.  The Fair Hearing Officer upheld most of the overstatement determination, reducing the repayment obligation only slightly to $602,454.29.  Dr. Handron appealed the Fair Hearing Officer's determination, and a two day evidentiary hearing was held before the Honorable Phillip McAfee, Administrative Law Judge. On September 19, 2007, the ALJ rendered a decisions substantially reducing the overpayment determination to a mere $5,434.48.  The reduction was based on a detailed review of approximately 25 boxes of records, expert testimony, and extensive review of the overpayment calculation.

Dr. Handron was represented by counsel during the ALJ proceeding, and indeed had been represented by counsel since November 2001.  Therefore, because of Dr. Handron's succcess, he

3

filed an application under the Equal Access to Justice Act, 5 U.S.C. § 504, on December 13, 2007 for attorneys' fees and costs in the amount of $59,525 and $5,848.93 respectively.

On February 19, 2008, the ALJ denied Dr. Handron's EAJA application because he found that the proceedings did not constitute an "adversary adjudication" under the Act, and thus the Act did not apply. Compl., Ex. C. at 8. On March 18, 2008, Dr. Handron filed an appeal of the ALJ's decision to the Medicare Appeals Council (MAC) of the Department of Health and Human Services. Because the MAC apparently lost Dr. Handron's appeal, he resubmitted it on May 13, 2008. Thereafter, on May 22, 2008, the MAC adopted the ALJ's decision, likewise finding that the EAJA did not apply because the proceedings did not constitute an "adversary adjudication." Compl., Ex. E at 8.

Plaintiff filed a complaint in this Court on June 23, 2008 to appeal the MAC's decision. Plaintiff filed a motion for summary judgment on March 16, 2009. Defendant filed a brief in opposition on May 27, 2009.[3] On October 13, 2009, the Court ordered Plaintiff to file a brief demonstrating subject matter jurisdiction over the matter. The Plaintiff complied on October 16, 2009, and the Court now holds that it has subject matter jurisdiction and that this matter is ripe for determination.

## II.     STANDARD

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

---

[3] Defendant via a letter dated May 12, 2009 sought leave of the Court to file an overlength brief of approximately 50 pages. The Court denied this request via letter dated May 18, 2009. Notwithstanding, Defendant filed a 38 page, 12 point font brief in violation of Local Civil Rule 7.2, which limits such briefs to 30 pages. However, because the violation appears to have been in good faith, no further action is warranted at this time.

R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact."  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Id.

A party dissatisfied with a determination of fees under the EAJA may appeal the determination to a United States court having jurisdiction to review the merits of the underlying decision.  5 U.S.C. § 504(c)(2).  The court's review of an attorney's fee determination is de novo where the determination rests on statutory interpretation of the EAJA.  See Kiareldeen v. Ashcroft, 273 F.3d 542, 545 (3d Cir. 2001); see also United States v. Marolf, 277 F.3d 1156, 1160 (9th Cir. 2002).

### III.     DISCUSSION

As noted at the outset, this dispute is essentially over what the phrase "or otherwise" in the EAJA means.  The EAJA provides for attorney's fees in certain administrative proceedings. See 5 U.S.C. § 504(a)(1).  Specifically, the EAJA provides that "[a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust."  5 U.S.C. § 504(a)(1).

By statute, "adversary adjudication" is defined as "an adjudication under section 554 of this title in which the position of the United States is represented by counsel *or otherwise* . . . ." 5 U.S.C. § 504(b)(1)(B) (emphasis added).  Even though the EAJA has been in existence since 1980, see Pub. L. 96-48, Title II, § 203(a)(1), (c), 94 Stat. 2325, 2327 (1980), a paucity of authority exists precisely defining what "or otherwise" means.  For purposes of the present dispute, however, the Court is called upon to squarely decide this issue.  Therefore, based on the legislative history of the EAJA, applicable case law, and relevant regulations, the Court concludes that the phrase "or otherwise" requires that a person physically appear at the adjudication and advocate a position on behalf of the United States.

#### A.     Basic Elements

Before delving into how the Court arrives at the above conclusion, the basic elements of a claim under § 504–and the elements that are not in dispute in this case–should be noted.  To

bring a claim under § 504 for attorney's fees, a party[4] must generally show 1) that the agency proceeding was an adversary adjudication, meaning the position of the United States was represented by i) counsel or ii) otherwise; 2) that it was an adjudication under section 554 of the Administrative Procedures Act, 5 U.S.C. § 554; 3) that the party was the "prevailing party"; and 4) that the position of the United States was not substantially justified.  See 5 U.S.C. § 504(a)(1).

The parties agree that the United States was not represented by counsel.  See Pl. reply br. at 6 ("That no one physically appeared for HHS at the hearing is admitted but is, nonetheless, of no instance."); Def. br. at 15 ("There is no dispute that CMS was not represented by counsel, or any other representative, in the ALJ proceeding.").   The parties also seemingly agree that the ALJ proceeding below was an adjudication under § 554.  See Def. br. at 12 ("ALJ hearings relating to Medicare Part B claims determinations would constitute adjudications required to be held pursuant to Section 554 of the Administrative Procedures Act."); see generally Compl. (seeking relief under § 504, which requires a § 554 proceeding).  Thus, those elements are not in dispute.

However, the parties ardently disagree over whether the ALJ proceeding was an "adversary adjudication," specifically whether the position of the United States was "otherwise" represented.  See Pl. br. at 6-15; Def. br. at 17-35.  The parties also seemingly disagree over whether Plaintiff was the prevailing party and whether the position of the United States was substantially justified.  See Def. br. at 36-37.  These latter issues are not addressed here since the

---

[4] "Party" is also defined under statute.  As is relevant here, a "party" is "an individual whose net worth did not exceed $2,000,000 at the time the adversary adjudication was initiated." 5 U.S.C. § 504(b)(1)(B).  At no point in the Complaint or in the Motion for Summary Judgment does Plaintiff actually allege or show that he satisfies this statutory definition.  Thus, this would be an independent ground for denying summary judgment.

Court finds that the ALJ proceeding was not an adversary adjudication.  Thus, the Court now turns to an examination of precisely what that term means.

### B.    Defining Adversary Adjudication

In its simplest form, Plaintiff's argument is essentially this: Even though no counsel for HHS–or any other person for that matter–appeared at the ALJ proceedings, the Department's position was "otherwise" represented by the Demand Letter, the Fair Hearing Officer decision, and the twenty-five boxes of records.[5]  See Pl. reply br. at 5.  Plaintiff maintains that the United States cannot avoid liability simply by choosing not to appear.  See Pl. br. at 8.  Plaintiff's argument assumes that under the EAJA, the United States is sufficiently "represented" if the adjudicator has access to what the United States would say or what it would want were someone to actually appear on its behalf.  In other words, Plaintiff believes that the "or otherwise" language in the statute does not require a person to physically appear and advocate on behalf of the United States.  Plaintiff posits that legislative history, caselaw, and relevant regulations support its position.  Based on a review of those sources, and the Court's own parsing of the statute, the Court simply cannot agree.

### 1.    Legislative History

As an initial matter, a court need not resort to legislative history to interpret a statute unless the statute is ambiguous.  Scafar Contracting, Inc. v. Sec'y of Labor, 325 F.3d 422, 425-26

---

[5] Plaintiff's main three arguments are 1) that the MAC applied HHS regulations too narrowly, 2) that the MAC ignored controlling case law, and 3) that the HHS regulations subverted Congressional intent.  Pl. br. at 6, 9, 12.  However, the Court finds that these arguments are all essentially species of the same being–namely what does the phrase "or otherwise" really mean.  Thus, the Court directs its analysis to answering that fundamental question.

(3d Cir. 2003).  The Court finds that the meaning of the phrase "or otherwise" is not clear under the plain language of the EAJA, and thus the legislative history warrants investigation.

Congress's intent with the EAJA was threefold: 1) "to encourage private litigants to pursue their administrative and civil actions against the government and not be deterred by the prospect of having to absorb the cost of their own attorneys' fees;" 2) "to compensate parties for the cost of defending against unreasonable government action;" and 3) "to deter the federal government from prosecuting or defending cases in which its position is not substantially justified."  Berman v. Schweiker, 713 F.2d 1290, 1297 (7th Cir. 1983).  Despite its noble purpose and the seemingly broad sweep, the EAJA was in fact enacted with quite a limited scope. Among the other required elements of a claim under the EAJA, Congress required an "adversary adjudication," and then particularly defined the term as requiring that the United States be represented by counsel or otherwise.  See H.R. Conf. Rep. 96-1434, at 23, as reprinted in 1980 U.S.C.C.A.N. 5003, 5012.   Congress's intent in defining adversary adjudication in this fashion was to "preclude[] an award in a situation where an agency, e.g, the Social Security Administration, does not take a position in the adjudication."  H.R. Conf. Rep. 96-1434, at 23, 1980 U.S.C.C.A.N. 5003, 5012.

Moreover, while the purpose of the Act was to benefit private citizens, Congress did not intend for that purpose to always trump the interests of the government.  Indeed in commenting on the requirement that the EAJA only apply to adversary adjudications, Congress noted "[i]t is basic fairness that the United States not be liable in an administrative hearing in which its interests are not represented."  H.R. Rep. 96-1418, at 7, as reprinted in 1980 U.S.C.C.A.N. 4984, 4991.  In other words, Congress did not intend that the EAJA would apply simply because a

person was fighting adverse government action, rather Congress only intended that the EAJA would apply when the government participated in the proceeding. This conclusion is supported by the Congressional Record from the EAJA's extension and amendment in 1985 wherein Congress commented on five pilot programs of the Secretary of Health and Human Services: The House Report noted that while Social Security Hearings were generally excluded from the EAJA, the five pilot programs where the Secretary was "represented at the hearing before the Administrative Law Judge," were covered by the Act because they were "precisely the type of situation covered by section 504(B)(1)(C)."[6] H.R. Rep. 99-120(I), at 10, as reprinted in 1985 U.S.C.C.A.N. 132, 138.

This history, while by no means unequivocal, supports the Defendant's position that the ALJ hearing was not an adversarial adjudication because no one appeared on the Department's behalf. Congress did not pass the statute with an unlimited reach. It did not intend that every adverse agency action where a private citizen chooses to defend is an action in which the party can garner fees. Were that the case, Congress could have passed the statute as merely requiring an adjudication, as opposed to an adversary adjudication. After all, most adjudications per se involve adverse action by the agency. If no adverse action existed, why would a party seek an adjudication?

Unfortunately for Plaintiff, Congress did not pass the EAJA with coverage for all adjudications. Based on the legislative history, particularly the comment on the pilot programs, Congress seemingly intended that the government would only be liable where it appeared in person and participated at the proceeding. Plaintiff's argument that this reading of the EAJA

---

[6] Section 504(b)(1)(C) defines "adversary adjudication."

gives the United States all the power to determine when a party can earn fees by simply choosing to not show up, is, for better or for worse, correct.  Congress intended that fees would arise only when the United States wrongfully defended an unjustifiable position.  See Berman, 713 F.2d at 1297.  Thus, Congress necessarily intended to give the government the power control its fate and the public fisc by giving it the power to choose to defend or not to defend agency action.

Therefore, based on the legislative history, the ALJ proceedings are not covered by the EAJA and Plaintiff is not entitled to fees because the Department of Health and Human Services did not send a person to represent its interests.

### 2.    Caselaw

Like the legislative history, caselaw also does not support Plaintiff's position that the "or otherwise" language does not require a person to physically appear at the adjudication.  Plaintiff attempts to support his position with two cases: Chicago Center Hospital v. Heckler, No. 84 C 10069, 1986 WL 10059 (N.D. Ill. Sept. 5, 1986); and Lane v. United States Department of Agriculture, 929 F. Supp. 1290 (D.N.D. 1996), aff'd in part and rev'd in part, 120 F.3d 106 (8th Cir. 1997).  However, based on a review of these cases and others, the Court simply cannot reach the same conclusion as the Plaintiff.

The first case, Chicago Center, did not truly involve only documents at the adjudication. In Chicago Center, the plaintiff sought review of a final decision of the Secretary of Health and Human Services denying reimbursement for certain costs incurred by the plaintiff under Medicare.  1986 WL 10059 at *1.  The plaintiff prevailed on one of its issues at the adjudication and then sought fees under the EAJA.  Id.  Though exactly what happened at the adjudication is unclear, the published opinions regarding Chicago Center show that HHS was definitely not

represented by any attorney at the adjudication.  See 1986 WL 10059, at *2; see also Chicago Ctr. Hosp. v. Heckler, No. 84 C 10069, 1985 WL 2492, at *2 (N.D. Ill. Sept 9, 1985).[7] Notwithstanding, the court noted that "[i]t is too narrow a reading of the statute to say that an adversary proceeding exists only when the position of the United States is represented by counsel."  1986 WL 10059, at *2.  From there, the court reasoned that because the adjudication was "a genuine adversary proceeding," fees and expenses were recoverable under the EAJA.  Id. The court did not, however, detail exactly what made the adjudication adversarial.

Notwithstanding, as Defendant points out, the 1985 opinion regarding the proceeding shows that HHS' position was advocated by a live witness who testified on behalf of the government.  See Def. br. at 27.  The 1985 opinion does indeed show that someone appeared at the adjudication and justified why HHS chose not to reimburse the plaintiff under Medicare.  See Chicago Ctr., 1985 WL 2492, at *2 ("[The Provider Reimbursement Review Board] also relied upon testimony of a witness who testified on behalf of the intermediary [(the entity responsible for reviewing providers' claims and administering benefits under Medicare)].").  This live testimony is something that indisputably did not occur in Plaintiff's adjudication before ALJ McAfee.  This live testimony certainly pushed Chicago Center's case within the realm of a proceeding in which the United States actively took a position, as was intended by Congress. That such testimony did not occur in this dispute, makes Chicago Center inapposite for Plaintiff's position that "or otherwise" does not require a person to physically appear.

Likewise inapposite, Lane v. The United States Department of Agriculture does not

_____

[7] Based on the briefs, it appears that Plaintiff is relying on the 1986 opinion in Chicago Center and Defendant countered by relying on the 1985 opinion.  Compare Pl. br. at 11, with Def. br. at 27.

support Plaintiff's position.  In <u>Lane</u>, the plaintiffs appealed to the National Appeals Division

(NAD) a decision of the Farmers Home Administration (FmHA) denying their application for

delinquent farmer loan servicing.  929 F. Supp. at 1292.  The NAD hearing officer ruled in the

plaintiffs favor, but denied plaintiffs' request for fees under the EAJA.  <u>Id.</u> at 1292-93.  On

appeal to the District of North Dakota, the court held that even though the FmHA was not

represented by counsel at the NAD hearing, fees could be awarded.  <u>Id.</u> at 1296-97.  The court

directly addressed the "or otherwise" language of the EAJA and held that because FmHA

representatives at the NAD hearing had acted as "advocates" for the FmHA, the hearing was an

adversary adjudication.  <u>Id.</u> at 1297 (citing <u>Pollgreen v. Morris</u>, 911 F.2d 527, 533 (11th Cir.

1990).

     As with <u>Chicago Center</u>, <u>Lane</u> shows that the "or otherwise" language requires some

person to actually appear at the proceeding and advocate for the United States.  This did not

occur with Plaintiff's adjudication before ALJ McAfee.  Plaintiff's cited cases simply do not

support a conclusion that documents alone are sufficient.  Moreover, caselaw not cited by the

Plaintiff further supports that the "or otherwise" language requires a physical advocate.

     For example, in <u>Pollgreen v. Morris</u>–as cited in <u>Lane</u>, 929 F. Supp. at 1297–the Eleventh

Circuit directly held that "otherwise" is "more appropriately read in the context of the entire

clause to refer to an individual who represents the position of the United States in a manner

similar to that of counsel."  911 F.2d at 533.  The <u>Pollgreen</u> court thought it important for the

EAJA that someone must actually "advocate" for the United States.  <u>See id.</u>  In other words, the

mere fact that a United States agency takes adverse action against a party, but does not appear at

the adjudication to review the adverse action, is insufficient to support fees under the EAJA.  <u>See</u>

13

Cole v. Sec'y of Health & Human Srvcs., 577 F. Supp. 657, 663-64 (D. Del. 1983) (holding action by Social Security Administration terminating disability benefits, even though incorrect and perhaps "outrageous," did not entitle plaintiff to attorney's fees under EAJA for proceeding where United States did not appear); see also In re Perry, 882 F.2d 534, 540 (1st Cir. 1989) ("The bare fact that an agency acting in an adjudicatory capacity rules against a private party, unjustifiably, is insufficient, absent the sovereign's adversary participation, to support a fee award under section 504.").

Other caselaw clearly supports that where the position of the United States is only "represented" by documents, those documents are insufficient to make the proceeding adversarial.  See Willis v. Sullivan, 931 F.2d 390, 400 (6th Cir. 1991) (holding proceedings not adversarial where counsel for Secretary of Health and Human Services sent plaintiff a letter denying requests for answers to interrogatories and motions to produce); Rowell v. Sullivan, 913 F. Supp. 78, 81 (D.D.C. 1993) (holding no adversarial adjudication where plaintiff received letter from counsel for Department of Health and Human Services regarding plaintiff's inquiry regarding disciplining certain attorneys in the Department).

In summation, while caselaw shows that "or otherwise" does not require an attorney to actually appear at the adjudication to make it adversarial, caselaw simply does not support that no one has to appear.  As the Eleventh Circuit pointed out, "or otherwise" must be read in context, and read in its proper context, the phrase strongly suggests that some*one* rather than some*thing* must appear at an adjudication.  Simply put, documents alone are insufficient under the EAJA to make a proceeding adversarial, and no caselaw exists suggesting otherwise.

Therefore, based on caselaw, the ALJ proceedings are not covered by the EAJA and

Plaintiff is not entitled to fees because the Department of Health and Human Services did not

send a person to represent its interests.

### 3.    Regulations

As with the above legislative history of the EAJA and supporting caselaw, regulations

regarding the EAJA likewise do not support Plaintiff's position that a person does not need to

physically appear at an adjudication to make it adversarial.  Congress charged the Administrative

Conference with the official duty of interpreting the EAJA and developing model rules.  <u>Scafar</u>

<u>Contracting, Inc. v. Secy' of Labor</u>, 325 F.3d 422, 428 n.4 (3d Cir. 2003).  Among the model

rules developed by the Administrative Conference was a rule further defining adversary

adjudication, a rule which specifically required a person to appear and to participate.  <u>See</u> Equal

Access to Justice Act: Agency Implementation, 46 Fed. Reg. 32,900, 32,912 (June 25, 1981).

The model rule stated: "The Act applies to adversary adjudications conducted by this agency.

These are adjudications under 5 U.S.C 554 [sic] in which the position of this or any other agency

of the United States, or any component of any agency, is represented by an attorney or other

representative who enters an appearance and participates in the proceeding."  <u>Id.</u>  The

Department of Health and Human Services substantially adopted the model rule with the

following: "These rules only apply to adversary adjudications.  For the purpose of these rules,

only an adjudication required to be under 5 U.S.C. 554 [sic], in which the position of the

Department or one of its components is represented by an attorney or other representative ('the

agency's litigating party') who enters an appearance and participates in the proceeding,

constitutes an adversary adjudication."  45 C.F.R. § 13.3.

When the Administrative Conference is charged with the duty of interpreting a statute and

15

developing model rules, the resultant rules are entitled to "some deference."  <u>Scafar</u>, 325 F.3d at

428 n.4.  The level of deference afforded depends on the "thoroughness evident in [the

Conference's] consideration, the validity of its reasoning, its consistency with earlier and later

pronouncements, and all those factors which give it power to persuade, if lacking power to

control."  <u>Id.</u> (citing <u>Skidmore v. Swift</u>, 323 U.S. 134, 139-40 (1944)).

The Court finds that the Administrative Conference's interpretation of the EAJA, and

HHS's subsequent adoption of that interpretation, is proper.  What is clear from the Conference's

published notice in the Federal Register is that the Conference thoroughly examined the EAJA

(though perhaps not spending considerable time on what the phrase "or otherwise" means).  The

Conference's notice covers nearly sixteen pages and discusses at length the input it received from

various sources.  <u>See generally</u> 46 Fed. Reg. 32,900.  Given further that the Conference's

ultimate conclusion that an adversary adjudication requires a person to appear and to participate

is consistent with the legislative history of the Act, the model rules are a clear source of guidance

for this Court.  Since that guidance suggests that someone rather than something must appear at

an adjudication, and since this did not occur in Plaintiff's case, the Court is compelled to find

that Plaintiff is not entitled to fees under the EAJA.[8]

---

[8] Plaintiff also raises an argument that another provision in HHS's regulations regarding adversary adjudications provides a "safe harbor" for cases where a person does not make an appearance.  <u>See</u> Pl. br. at 6-9 (citing 45 C.F.R. § 13.3(b)).  This argument is unpersuasive however because HHS does not have the capacity to extend the EAJA beyond its enacted bounds.  <u>See</u> <u>Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.</u>, 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").  Based on the above analysis, permitting fees where a person does not appear for the United States is an improper expansion of the Act.  Moreover, the Court does not believe that HHS intended its regulations to cover such a situation.

16

Therefore, based on the regulations regarding the EAJA, the ALJ proceedings are not covered by the EAJA and Plaintiff is not entitled to fees because the Department of Health and Human Services did not send a person to represent its interests.

### 4.  Court's Parsing of the EAJA

In addition to the above legislative history, caselaw, and regulations, the Court's own review of the EAJA concludes that the statute requires a person to physically appear on the United States' behalf.  As discussed, the statutory definition of "adversary adjudication" is "an adjudication under section 554 in which the position of the United States is *represented* by counsel or otherwise . . . ."  5 U.S.C. § 504(b)(1)(C) (emphasis added).  Though not put in issue by either the Plaintiff or the Defendant, the Court finds that the emphasized word sheds significant light on the issue at hand.  The word "represented" in context of being coupled with "by counsel" suggests that the statute requires some level of advocacy.  Advocacy, in turn, in the context of a live adjudication seems to impart some modicum of real-time interplay with the fact-finder.

Put another way, a party would never represent its interests at oral argument before a court simply by submitting a brief and then staying away as counsel for its opponent advocated the contrary position.  This would be no sort of representation at all.  No reasonable client would feel that he or she was "represented" at the proceeding simply because an attorney made the client's position known in writing.  While the client certainly has representation, the client's position is not represented to the court in the proper manner given the live exchange with the court, which affords opportunity to expand the ideas that appear in the sterile writing.

Likewise in the context of the EAJA, the United States is not represented by documents

that support or show its position.  The United States has no real-time interaction with the fact-finder to advocate its interests.  This advocacy seems to be required by the EAJA.

Furthermore, were Plaintiff's view correct that the United States can be represented by documents alone, then everything after the words "adjudication under section 554 of this title" would be mere surplusage.  An administrative adjudication is almost always going to be based on an adverse decision by the United States that is recorded in some form.  To say that these recordings thereafter make a proceeding adversarial would mean that every adjudication is within the EAJA's scope of coverage, since every adjudication would per se be adversarial.  This was clearly not the result intended by Congress.

Therefore, based on the Court's own analysis of the EAJA, and based on a review of its legislative history, applicable caselaw, and relevant regulations, the Court finds that an adversary adjudication under the EAJA requires that a person physically appear at the adjudication to advocate on the United States' behalf.  Since that did not occur in this case, the EAJA does not apply and Plaintiff is not entitled to fees.  Thus, Plaintiff's Motion for Summary Judgment is denied.  Furthermore, since the only relief sought in the Complaint is fees under the EAJA, and since the EAJA does not apply as a matter of law, the entire case is dismissed.

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED and the case is DISMISSED.


Dated:   10-27-2009                                           /s/ Robert B. Kugler
                                                             ROBERT B. KUGLER
                                                             United States District Judge

18